## N. Y. SUPERIOR COURT.

### THE NORTHAMPTON NATIONAL BANK agt. AMOS M. KIDDER and others.

*Stolen negotiable bonds—Possession does not create presumption of ownership— Rule as to presumption reversed in such cases — Burden of proof.*

Antecedent consideration is not sufficient to enable the holder of stolen negotiable bonds to hold them against the loser and owner before the robbery.

Possession does not create a presumption of ownership in the case of negotiable paper shown to have been stolen. The robbery reverses the usual rule as to the presumption. The holder after the robbery has the burden on him to prove value paid and parted with contemporaneously, good faith, purchase before maturity, &c. (*Wylie* agt. *Speyer*, 62 *Howard*, 110, *approved.*)

When a verdict is rendered subject to the opinion of the court at general term, the whole case is before the general term on its merits, and no new trial can be ordered.

*General Term, November*, 1883.

ACTION in trover against the defendants, brokers and members of the stocks exchange, for the value of certain negotiable bonds stolen from the plaintiffs' vaults by masked burglars and afterwards bought and sold by the defendants. The bonds contained a covenant making the principal due, in case of default in the interest coupons, or of default in the stipu-

lated payments to the sinking fund. Such defaults had occurred for a long period. A foreclosure suit on the bonds had been brought and the road was still in the hands of a receiver. Plaintiff also made a claim by reason of the defaulted coupons going with some of the bonds and other alleged circumstantial notice. At the close of the evidence at trial, both sides withdrew their exceptions, and the chief judge directed a verdict for plaintiff (subject to the opinion of the general term), basing his decision mainly on the plaintiff's claim that the technical maturity of the bonds by the defaults made the bonds dishonored paper.

*W. G. Peckham* and *E. W. Tyler*, for plaintiff. The burden of proof is all on defendants after we prove loss by robbery, and the case can rest on this alone (*Nat. Bank of Courtlandt* agt. *Green*, 43 *N. Y.*, 298; *Kuhns* agt. *Gettysburg Nat. Bank*, 68 *Penn.*, 445; *Bank of North Am.* agt. *Kirby*, 108 *Mass.*, 497). Waiver of the defaults on our part is not proven and cannot be presumed (*Ragan* agt. *Day*, 46 *Iowa*, 239; *Penn. Hosp.* agt. *Gibson*, 2 *Mills*, 326). The verdict is to be upheld on any theory sustainable on the facts (21 *N. Y.*, 490). It is axiomatic that overdue paper is non-negotiable (*Vermilye* agt. *Adams Exp.*, 21 *Wall.*, 138; *People* agt. *Superior Ct.*, 19 *Wend.*, 109). This condition broken, the paper is overdue (*Daniel Neg. Ins.*, sec. 1506, *a*). The other taints on the paper entitle us to recover also (*First Nat. Bank* agt. *County Court*, 14 *Minn.*, 78). Defendants claim, as to the burden of proof, shows that it was not by surprise that he neglected to prove values, &c. Failure of proof and defect of proof are questions of law.

*W. M. Safford* and *M. Williams*, for defendant. The burden is on plaintiff to prove *mala fides* in defendant (*Seybel* agt. *Currency Bank*, 54 *N. Y.*, 288; *Welch* agt. *Sage*, 47 *N. Y.*, 143; *Mut. Ins. Co.* agt. *Hatchfield*, 73 *N. Y.* 226; *Murray* agt. *Gardner*, 2 *Wall.*, 110.) The default of the

coupons did not make the principal due (*Cromwell* agt. *County of Sac*, 96 *U. S.*, 51 ; *Railway Co.* agt. *Sprague*, 103 *U. S.*, 756). Receipt of interest on later coupons was a waiver of default (*Sire* agt. *Weightman*, 25 *N. J.*, 103 ; *Conkling* agt. *King*, 10 *N. Y.*, 440). The burden of proof is not on the defendant to prove value or *bona fides* (*Goodman* agt. *Simons*, 20 *How. U. S.*, 343). *Bona fides* was a question for the jury.

INGRAHAM, *J.*— This action was brought to recover for the conversion of certain consolidated second mortgage bonds of the Ohio and Missouri Railway Company.

It appears that prior to the 9th of January, 1876, the bonds in question were the property and in the possession of the plaintiffs, a national bank doing business at Northampton in the state of Massachusetts, and that on the 9th of January, 1876, plaintiff was robbed of a large amount of property including the bonds in question; that at the time of the robbery the said bonds were not in default but interest had been regularly paid thereon; that the coupons that become due on the 1st of October, 1877, were not paid, and had not been paid up to the time of the trial; that on the 28th of April, 1881, defendant purchased the said bonds in the regular course of business at the New York Stock Exchange from Lucien H. Niles, a member of the exchange in good standing, and paid therefor. It does not appear, however, what consideration was paid or whether or not any money was actually paid *by defendants* for the bonds. At the close of the testimony plaintiff requested the court to direct a verdict in favor of the plaintiff. The defendant also requested the court to direct a verdict for the defendant. Neither party requested the court to submit any questions to the jury and the case must be treated as a question of law, on the facts proved—that the bonds in question were negotiable instruments and possessed all the qualities and attributes of such obligations is well settled. (*Gilpike* agt. *City of Dubuque*, 1 *Wall.*, 206 ; *Murray* agt. *Lardney*, 2 *id.*, 113.)

It is also well settled that the possession and production of a negotiable instrument is *prima facie* evidence of title (*Mechanics and Traders' Bank* agt. *Crow*, 60 *N. Y.*, 87; *Murray* agt. *Lardney, supra*). Plaintiff to rebut such presumptions proved on the trial that the bonds were stolen from the bank in January, 1876. The burden of proof was then changed, and the defendants to sustain their title to the bonds were then required to show under what circumstances and for what value they became the holders (1 *Daniel Neg. Ins., sec.* 166). In other words, in order to overcome plaintiff's title it was necessary for defendants to prove that they purchased the bonds before maturity, and paid for them a valuable consideration. As a leading English case on this question says: "Where a note is proved to have been obtained by fraud that affords a presumption that the person who is guilty will dispose of it, and would place it in the hands of another person to sue upon it," such presumption operates against the holder, and it devolves upon him to show that he gave value for it (*Binby* agt. *Bidwell*, 13 *Mees. & Wes.*, 73, *cited and approved in First National Bank* agt. *Green*, 43 *N. Y.*, 300; *Porter* agt. *Knapp*, 6 *Lans.*, 127). If defendants failed to prove that they paid a valuable consideration for the bonds plaintiff was entitled to a verdict.

After a careful examination of the evidence I have been unable to discover any proof that defendant paid a valuable consideration for the bonds. The only evidence in relation to the purchase of the bonds by the defendants is that given by the defendant Morse. He was first called as a witness for the plaintiff, and on his redirect-examination, at folio 49, he first speaks of the purchase of the bonds; "that it was in 1881 that we (defendants) paid for the bonds;" and then, at folio 50, "we bought these bonds on April 28, 1881." After plaintiffs rested Morse was recalled. He again stated that he bought the bonds on the 28th of April, 1881. On cross-examination he said he could not swear that he in person bought the bonds, but he knew that the firm purchased them, and finally said,

" I would swear that we bought these bonds, paid such a price for them, and received them on a given day."

In my opinion this was not evidence that the defendants paid a valuable consideration for the bonds. It would be true if the defendants had taken the bonds for an antecedent debt they would then have " purchased" the bonds and paid for them, yet it is well settled that such payment of a consideration would not overcome plaintiff's title and make defendants holders for value (*Phœnix Insurance Co.* agt. *Clark*, 81 *N. Y.*, 221).

The court of appeals, in the case of *First National Bank* agt. *Green* (43 *N. Y.*, 300), held that " a plaintiff suing upon a negotiable note or bill purchased before maturity is presumed in the first instance to be a *bona fide* holder. But where the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, the plaintiff will then be required to show under what circumstances and for what value he became the holder."

In *Ocean National Bank* agt. *Carll* (55 *N. Y.*, 440) the point was whether plaintiff had failed to prove he was a *bona fide* holder of the note, upon which the action was brought for value, and the court of appeals reversed a judgment for plaintiff, on the ground that the witness who had testified that the note in suit was discounted and that a check produced was given for the avails, made the statement from books and papers, and not from their personal knowledge. In this case the evidence was uncontradicted that the note was in possession of the plaintiff before maturity, but the court held this was not sufficient. The consideration must be shown.

In *Wylie* agt. *Speyer* (62 *How.*, 110) judge VAN VORST, in an action to recover some coupon bonds, stolen from the vaults of the plaintiff, says: " The plaintiff's title is made out by showing the fact of original ownership, and that the property had been stolen; if they reached the hands of *bona fide* purchasers before maturity, through whom the defendants claim, they must show it." We think upon principle and

authority this to be the true rule. In the case at bar, defendants did not show that they paid any valuable consideration for the bonds, and not having brought themselves within the rule cannot hold the bonds as against the plaintiff.

Many cases could be cited to sustain this proposition, but we think the foregoing are sufficient. Defendants claimed on the argument, and cited many cases to sustain their contentions, that the production of the bonds threw the burden of proving that the defendants did not pay a valuable consideration on the plaintiff. We have examined the cases cited but do not think they are authorities for the defendants.

Defendants also insisted that the court should assume that the plaintiff did not, on the trial, raise the point defendants had not paid a valuable consideration for the bonds. It nowhere appears that both the court and counsel assumed that defendants were *bona fide* purchasers for value. But from all that appears it may be assumed that defendants vested their claim, at the trial, as they did on the argument on appeal, on the proposition that the possession of the bonds was presumptive evidence of title in the holder, and the burden of proof was upon the person asserting such title, to show he was not such a *bona fide* holder. This position, as before stated, we do not consider to be well taken. But in no case cited did the appellate court assume a fact to exist for the purpose of reversing a judgment, and in order to set aside a verdict and direct a verdict for the defendants, it would be necessary for the court to assume, in this case, that defendants paid a valuable consideration for the bonds in question, of which, as before stated, there was no proof.

If defendants purchased the bonds in good faith and paid value for them, there could have been no difficulty in their proving such payment, and having failed to give any evidence which would sustain a verdict in their favor, we think the court below was right in directing a verdict for the plaintiff. Where a verdict is rendered subject to the opinion of the court at general term, the whole case is before the general

term on its merits, and no new trial can be ordered (*Durant* agt. *Abendroth*, 69 *N. Y.*, 150). It follows, therefore, that defendants have failed in their defense, and judgment must be ordered in favor of the plaintiff on the verdict, with costs.

Verdict affirmed.